IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID TOREN,<br>  40 East 80th Street<br>  New York, NY 10175,<br><br>  *Plaintiff,*<br><br>  v.<br><br>FEDERAL REPUBLIC OF GERMANY,<br>  a foreign state; and<br><br>FREE STATE OF BAVARIA,<br>  a political subdivision of the Federal Republic of Germany,<br><br>  *Defendants.* | Case No. _____ |

## **COMPLAINT**

David Toren ("Toren") is a lawful heir of valuable art that Nazis stole from his great-uncle, David Friedmann ("Friedmann"). Toren has full and sole authority to bring this lawsuit on behalf of all of Friedmann's heirs to compel Defendants (the Federal Republic of Germany ("Germany") and the Free State of Bavaria ("Bavaria") (collectively, "Defendants")) to return the stolen art and to recover damages.

Toren, by and through his attorneys, alleges the following on knowledge with respect to himself and his own conduct, and upon information and belief as to all other matters:

**I.   SUMMARY OF THE ACTION**

1.   In February 2012, German law enforcement officers raided the small apartment of an 81-year-old recluse in Munich named Cornelius Gurlitt. From that apartment, Defendants seized over 1,400 classic works of art, including paintings and drawings by Picasso, Chagall, and Matisse.

2. For almost two years, Germany and Bavaria hid their remarkable discovery from both the public and the rightful owners of the artworks. Indeed, Germany and Bavaria kept their recovery of the art a secret until a whistleblower forced them to make the discovery public. In a November 2013 press conference, Defendants disclosed for the first time that they had recovered this art. German authorities displayed a few of the newly-discovered works at the press conference, including an oil painting by Max Liebermann called "Two Riders on the Beach" ("Two Riders") (also known as "Rider on the Beach," "Riders on the Beach," and "Two Riders at the Sea").

3. While Defendants' announcement shocked and confused the international art world, Plaintiff David Toren, an 88-year-old man in New York, understood immediately what Defendants had found. Toren had seen "Two Riders" before, when it was hanging on the wall of his great-uncle's villa at Ahornallee 27 in Breslau, Germany. Toren's great-uncle was David Friedmann, a successful industrialist and businessman who passionately collected valuable artworks created by some of the masters of the nineteenth and twentieth centuries.

4. Toren has not seen Friedmann or his art collection since 1938. Friedmann died in 1942, and one year later, the Nazis killed the last member of Friedmann's immediate family, his daughter Charlotte. By the end of World War II, Friedmann and his immediate family were dead and Friedmann's entire art collection ("Friedmann Collection"), including "Two Riders," was gone.

5. David Toren left Germany in August 1939, when he was only 14 years old. His parents boarded him on a train to Sweden that was part of the "Kinder Transport," a coordinated effort to save Jewish children from the Nazis. After Toren left Germany, the Nazis murdered every member of Toren's extended family, other than his brother and aunt. The Nazis killed

Toren's parents in a gas chamber in the Auschwitz death camp in 1943. Toren has no heirlooms other than a single photograph of his family to remind him of his parents, and nothing that belonged to his family that he can pass on to his son and grandchildren.

6. After growing up as an orphan, Toren immigrated to the United States in 1956 with less than $100 to his name. As a result of his tireless spirit and will to succeed, Toren put himself through law school and has lived a long and fulfilling life in Manhattan. As he approaches his 89th birthday, however, he still has not recovered a single piece of his family's treasured art collection.

7. After years of searching for the Friedmann Collection, Toren discovered documents that irrefutably prove that the Nazis stole those artworks. On December 5, 1939, a representative of the Nazi Ministry of Economics in Breslau wrote a letter titled "Securing Jewish Holdings of Art," to Herr Funk, the Nazi Minister of Economics in Berlin. In the letter, the Nazi agent describes the "valuation of artwork of a Jew, Friedmann, [in] Breslau, Ahornallee 27." He goes on to explain that the Nazis catalogued the art in Friedmann's art collection at Friedmann's villa in Breslau. The letter lists prominent artists in the Friedmann Collection, including "paintings by French impressionists such as Courbet, Pissaro, Raffaëlli, Rousseau and good German landscape artists such as Thaulow, Oberländer, and Leistikow . . . ." It also identifies two paintings by Max Liebermann, including "Two Riders" – the very work of art that Germany and Bavaria showcased in their reluctant and belated press conferences regarding the recovery of Nazi-stolen art from Cornelius Gurlitt's apartment. The letter ends by stating that the writer strictly prohibited Friedmann from selling or otherwise disposing of the artworks without permission. *See* Exhibit 1 for letter with certified English translation.

8. While the reclusive Cornelius Gurlitt seemed like an unlikely keeper of a hoard of Nazi-stolen art, his father was the notorious Hildebrand Gurlitt, an art expert who became known as "art dealer to the Führer" in the 1940's. The elder Gurlitt made his living by trading in art that the Nazis seized from Jews and other "undesirables" prior to, and during, World War II. Gurlitt used the Gestapo and the Nazi party to amass an immense collection of valuable art for Adolf Hitler, partly for the purpose of creating the Führermuseum, which was intended to rival the top museums in the world. The Nazis also gave Gurlitt other stolen artworks to sell to raise money to fund the Nazi war effort.

9. With Hitler's defeat, the Führermuseum never materialized, and the war ended. But Hildebrand Gurlitt squirreled away a collection of art purportedly worth over €1 billion. His reclusive son has spent his entire life vainly trying to "protect" this stolen collection by keeping it a secret from the rightful owners and from the rest of the world.

10. Defendants Germany and Bavaria now admit that they knew about Gurlitt's collection for almost two years before a whistleblower leaked the information to the press and forced them to make it public. Defendants further admit that they have over 1,400 artworks from Hildebrand Gurlitt's collection in their custody that were taken from his son's apartment in Munich, including "Two Riders," and that they intend to keep custody of them until they determine ownership.

11. Toren quickly presented irrefutable evidence to Defendants that the painting was stolen by the Nazis from Friedmann and that Toren is Friedmann's lawful heir. Toren demanded that Defendants return the art immediately. Even though Defendants' own lost art website correctly identifies the provenance of "Two Riders" as "Collection David Friedmann, Breslau,"

thus far Defendants have refused Toren's demand, while offering no tenable basis to doubt the legitimacy of Toren's claim.

12. Every day that Defendants deprive the rightful owners of possession of the Nazi-stolen works of art, they perpetuate the persecution of Nazi victims. Germany and Bavaria have not explained why they kept their discovery of Nazi-looted art secret for almost two years. Nor have they explained why they believed such secrecy would aid, rather than impede, their efforts to determine the artworks' rightful owners.

13. Toren brings this lawsuit to recover "Two Riders" and the other works in the Friedmann Collection that the Nazis stole from his family. He further seeks an order requiring Defendants to publish a complete list of the art seized from Cornelius Gurlitt and to provide whatever information is in their files about the provenance of art stolen by the German government or its agents prior to 1945.

## II. THE PARTIES

14. Plainiff David Toren is a United States citizen who resides in New York, New York. Toren is a lawful heir of David Friedmann. Toren is authorized to bring this suit on behalf of all of Friedmann's lawful heirs.

15. Defendant, the Federal Republic of Germany, is a foreign state as defined in 28 U.S.C. § 1603(a).

16. Defendant, the Free State of Bavaria, is also a foreign state as defined in 28 U.S.C. § 1603(a).

## III. JURISDICTION AND VENUE

17. This Court has subject matter and personal jurisdiction over Germany and Bavaria pursuant to 28 U.S.C. § 1330. Neither Defendant is entitled to immunity under

28 U.S.C. §§ 1605-1607 (the Foreign Sovereign Immunities Act ("FSIA")), and process will be served pursuant to 28 U.S.C. § 1608.

18. "If service of process has been made under § 1608, personal jurisdiction over a foreign state exists for every claim over which the court has subject matter jurisdiction. In turn, the statute automatically confers subject matter jurisdiction whenever the state loses its immunity pursuant to [§§ 1605-1607]. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002) (internal citations omitted).

19. Pursuant to the FSIA, "A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

20. Defendants' acts took place outside the territory of the United States because Defendants seized "Two Riders" and other works of art from the Friedmann Collection from Cornelius Gurlitt in Munich, Germany, in or around February, 2012. Defendants have indicated their intention to store the seized artworks until they can determine ownership and return the artworks to their rightful owners.

21. Defendants knew or should have known that ownership rights to "Two Riders" and the rest of the Friedmann Collection remained, at all relevant times, with Friedmann's heirs and that Toren resided in the United States. Indeed, Defendants' own lost art website correctly identifies the provenance of "Two Riders" as "Collection David Friedmann, Breslau."

22. Defendants' intent to store the artworks until they can determine ownership and return the artworks to their rightful owners created an express, implied-in-fact, or constructive bailment contract between Defendants and the artworks' rightful owners. By entering into a

bailment agreement with Toren, Defendants engaged in commercial activity. A bailment agreement constitutes commercial activity even when entered into by a sovereign because it is the type of activity by which a private party engages in trade and commerce. *De Csepel v. Hungary*, 714 F.3d 591, 598-99 (D.C. Cir. 2013). A bailment is a form of contract, and the repudiation of a contract is exactly the type of activity in which a private player within the market engages. *Id.* at 599.

23. Defendants' continued possession and refusal to return the Friedmann Collection to Toren have caused a direct effect in the United States. It is at least implied in Defendants' statements that they will return the artworks to their rightful owners, wherever they may be. Here, Toren is a United States citizen and demands return of "Two Riders" and the rest of the Friedmann Collection to him in the United States. Through their continued refusal to return the artworks to Toren in the United States, Defendants continue to cause a direct effect in the United States.

24. Venue is proper in this District, as the Defendants are "a foreign state [and a] political subdivision thereof." 28 U.S.C. § 1391(f)(4).

## IV.   BACKGROUND FACTS

### A.   David Friedmann Was a Passionate Art Collector Who Built an Impressive Collection of Paintings, Including "Two Riders" by Max Liebermann.

25. David Friedmann was a prominent Jewish businessman and industrialist from Breslau, Germany, which became the Polish city of Wroclaw after World War II. Friedmann made his fortune primarily as a landowner. He owned four agricultural estates totaling 10,000 acres in the province of Silesia, about an hour outside of Breslau, which he leased to farmers to grow sugar beets. The property included a sugar refinery, a distillery, and a hunting lodge.

26. Friedmann's passion was collecting rare and valuable art. His villa at Ahornallee 27 in Breslau was like a museum, with a trove of paintings, porcelain, pottery, Persian rugs, and antique furniture. The crown jewel of the Friedmann Collection was "Two Riders on the Beach," an oil painting on canvas by German Jewish impressionist Max Liebermann. The painting depicted two men riding horses across the wet sand.

27. Friedmann first saw "Two Riders" in November 1905, at an exhibition sponsored by the legendary Berlin gallery owner Paul Cassirer. Friedmann, who was 48 at the time, liked the painting so much that he purchased it shortly thereafter. He subsequently lent the painting to museums several times, including as part of a 1927 exhibition to commemorate Liebermann's 80th birthday. When it was not being exhibited, the painting hung on a wall in a sunroom in Friedmann's Breslau villa. Friedmann's Collection also included another oil painting by Liebermann called "Basket Weavers."

28. The Friedmann Collection also contained works of French Impressionists like Gustave Courbet, Camille Pissarro, Jean-François Raffaëlli, and Henry Rousseau, as well as the works of well-known landscape artists, such as Frits Thaulow, Adolf Oberländer, and Walter Leistikow.

     **B.**     **Toren Has Vivid Memories of Friedmann and His Art Collection.**

29. Toren is the grandson of the late Siegmund Friedmann, who was the brother of David Friedmann. Toren was born in Breslau, Germany in 1925 and lived there until he was 14.

30. Toren fondly remembers his great-uncle and recalls that he owned a magnificent villa at Ahornallee 27, in what was then Breslau, as well as four country estates outside the city. He remembers frequently visiting his great-uncle's villa, where his father often played the three-person card game Skat in the company of composer Richard Strauss, who was among his great-

uncle's regular guests. Toren vividly recalls seeing "Two Riders" hanging on a wall in the sunroom where his father, his great-uncle, and his guests played cards every few weeks.

31.     The last time Toren saw Friedmann was on November 9, 1938, which was the day following "Kristallnacht," when a high-ranking Nazi general took ownership of one of Friedmann's estates. Kristallnacht, or crystal night, was the night on which the members of the Nazi party went on a rampage destroying and seizing Jewish-owned properties – leaving behind little more than broken windows and store fronts – burning synagogues, and arresting and killing Jews.

32.     In August 1939, Toren's parents placed him on a train to Sweden, part of the "Kinder Transport," or child transport, designed to save Jewish children. His brother traveled to Holland with another transport a day before the Nazi invasion of Poland in September 1939.

        **C.**      **The Nazis Engaged in a Widespread Campaign to Loot the Valuable Property and Artworks of Jews and Others Throughout Europe.**

33.     The Nazi agenda included the looting of rare and valuable artworks owned by Jews. The German and Bavarian governments, including their police, authorized, fully supported, and carried out a program of wholesale plunder of Jewish property, stripping anyone "of Jewish origin" of their assets.

34.     Hitler's twisted art campaign focused on three principal goals. First, he tried to rid the world of "degenerate art" which, in his view, included abstract and other modern works. Second, he sold art in other countries to fund the Nazi war effort. Third, he wanted to establish the world's preeminent art museum in his hometown of Linz, Austria, and call it the "Führermuseum." Hitler employed the might of Germany's military, police, and bureaucracy to prey on Jewish collectors and steal immensely valuable art to fulfill these goals.

### D. **Hildebrand Gurlitt Became an Art Dealer to the Führer.**

35. One of the key figures retained by Hitler to seize and curate art was Hildebrand Gurlitt, a renowned art dealer who aided the Nazis with his eye for valuable art and his connections in the art world. The Nazis so valued Gurlitt that he became one of Hitler's two most significant art dealers in the 1940's. Gurlitt acquired and sold art to fund the Nazi war effort, and he also collected and curated art for the Führermuseum.

36. Gurlitt worked closely with the Gestapo to steal art from Jews. Sometimes he collected and curated art that had been seized by the Gestapo, and other times he actually directed the Gestapo to loot Jewish homes to seize certain valuable collections.

### E. **Gurlitt Worked with the Nazis to Seize the Friedmann Collection.**

37. There is irrefutable evidence that the Nazis stole the Friedmann Collection, including "Two Riders."

38. Just a few months after Toren escaped Germany as a child, on December 5, 1939, Dr. Westram, a representative of the Ministry of Economics in Breslau, wrote a letter titled "Securing Jewish Holdings of Art." *See* Exh. 1. The letter was to Herr Funk, the Nazi Minister of Economics in Berlin. Westram describes to Funk the "valuation of artwork of a Jew, Friedmann, [in] Breslau, Ahornallee 27." *Id.* He goes on to describe David Friedmann's art collection and to confirm that the Nazis catalogued the Friedmann Collection at his villa in Breslau. *Id.* The letter lists prominent artists in Friedmann's collection, including "French impressionists such as Courbet, Pissarro, Raffaëlli, [and] Rousseau," and identifies well-known landscape painters, such as Frits Thaulow, Adolf Oberländer, and Walter Leistikow. *Id.* The letter also mentions valuable porcelain, pottery, Persian rugs, and antique furniture. *Id.*

39. Westram's December 5 letter specifically identifies paintings by Max Liebermann, including "Two Riders" and a painting called "Basket Weavers," and reports the

10

paintings could fetch 10,000-15,000 Reichsmarks and 3,000-4,000 Reichsmarks if sold abroad, respectively. *Id.* The letter asks for "authoriz[ation] to secure such objects" "in the interest of the Reich." *Id.* The letter ends by stating that the writer "forbade the Jewish owner to sell any of the works of art, or to dispose of it otherwise without obtaining permission from the authorities." *Id.*

40. Cornelius Hofstede, the director of the Silesian Museum in Breslau, Germany, was one of Gurlitt's main suppliers. After Dr. Westram wrote the letter, Hofstede directed the Nazis to seize paintings from local Jewish homes. He then appraised and curated the looted art. On August 28, 1942, Hofstede wrote to Gurlitt "offer[ing] [him] two Liebermann pictures," "Two Riders" and "Basket Weavers." *See* Exhibit 2 for letter with certified English translation. Hofstede ends the letter "With kind regards and Heil Hitler!" *Id.*

41. Friedmann died in 1942, and his villa in Breslau was sold at auction, with the proceeds "forfeited to the Reich." His only daughter, Charlotte, was killed by the Nazis in 1943. Both of Toren's parents were killed at the Auschwitz death camp in 1943, where an acquaintance saw them being taken to the gas chamber.

**F.    Gurlitt Kept His Nazi-Stolen Art After the War Ended.**

42. According to Hildebrand Gurlitt, his home in Dresden burned down during the allied bombing of the city and all of the records of ownership of his art collection were destroyed. Conveniently, however, the art was not harmed by the same fire.

43. After his home was destroyed, Gurlitt moved to Aschbach Castle, the Bavarian home of Baron von Pölnitz. Hildebrand Gurlitt met Pölnitz in Paris, where Pölnitz was stationed as an officer in the German Air Force and Gurlitt was looting art.

44.     Gurlitt lived in the castle with his family, Pölnitz, and Karl Haberstock, the other main art collector for Adolf Hitler.  Gurlitt kept his stolen collection of art in boxes and crates in the castle and in a nearby old watermill.

45.     Gurlitt died in a car accident in 1956, and his widow, Helene, moved to Munich with their son, Cornelius.  Helene died in 1967.

46.     Cornelius remained for years in the same 1,076 square foot apartment in Munich, in which he kept over 1,400 works of art that he acquired from his father's collection.  "Two Riders" apparently hung on his apartment wall for decades.  Cornelius has never worked.  When he has needed money, he has simply sold a piece of art from his father's collection.  In the fall of 2011, for example, Cornelius admits that he attempted to sell "Two Riders," but he resorted to selling a different painting instead because he physically could not get "Two Riders" off the wall.  He also previously sold "Basket Weavers," another Liebermann painting from the Friedmann Collection, through a well-known auction house in Berlin.  The present location of this painting is unknown.

### G.     German Officials Raid Gurlitt's Apartment in Connection with an Unrelated Investigation of Gurlitt for Tax Evasion and Embezzlement.

47.     On September 22, 2010, Cornelius was traveling on a train from Zurich, Switzerland back home to Munich, Germany.  German Customs officials on the train remembered seeing Cornelius just a few hours earlier on a train going in the opposite direction, from Munich to Zurich.  They suspected that he had taken the short round trip to withdraw money from a Swiss bank account and bring it back into Germany.  The customs inspectors asked him if he had any money on him.  He said he did not, but the inspectors did not believe him.  During a full body search, they found €9,000.

48. After this incident, the Augsburg prosecutor and German customs and tax inspectors performed an investigation of Cornelius for tax evasion and embezzlement. They could not find any bank accounts, tax records, or any other information on him. This raised red flags. They eventually obtained a warrant to search his apartment. On February 28, 2012, they searched his apartment, and over three days, seized 1,406 works of art. The trove included works by Chagall, Picasso, Matisse, and Liebermann's "Two Riders." Reports estimate the value of the seized artworks at over €1 billion.

49. For almost two years, German authorities kept the raid and art seizure secret, despite the fact that a number of these artworks were listed on the German government's website for lost art, including "Two Riders." The raid and seizure were disclosed to the public only because they were leaked by a whistleblower to the press. On November 4, 2013, the German magazine *Focus* disclosed to the public the details of the February 2012 seizure and the existence of the 1,406 works of art that Defendants had, for some reason, not reported to the public.

50. On November 5, 2013, the day after the *Focus* article, the Augsburg prosecutor's office first publicly acknowledged the raid of Cornelius' apartment and the seizure of the artworks found therein. In a press conference that day, Defendants provided information about the raid to the press and showed five of the paintings that had been seized. "Two Riders" was one of those shown. Indeed, the painting has become the "poster child" of the raid and a symbol of the treasure trove, with many leading newspapers, including *The New York Times*, *The Wall Street Journal*, and *Der Spiegel*, publishing a color image of the painting on their front pages alongside stories of the raid.

51. Toren's lawyer in Germany, who was retained to track down pieces from the Friedmann Collection and who had registered "Two Riders" with the German website for lost

13

art, immediately called Toren to report the news. The German lawyer recognized "Two Riders" at the press conference and told Toren that he was going to put in a claim for the work that same day, which he did.

### H. Defendants Appoint a Task Force to Determine Ownership of the Paintings, but Have Not Returned "Two Riders" to Toren.

52. Defendants seized the art and indicated an intent to keep custody of the art, determine the art's rightful owners, and return the art to its rightful owners. In November 2013, Defendants formed a Task Force to assist them with their investigation into the provenance and ownership of the seized art, which currently is in a secret undisclosed location in Germany.

53. Toren is a rightful owner of the Friedmann Collection, including Max Liebermann's "Two Riders." In a series of letters beginning on November 5, 2013, Toren made demands to Defendants for the return of the artworks from Friedmann's Collection. By letter dated November 21, 2013, Toren was informed that his demand letter had been forwarded to the Task Force. To date, the Task Force, Germany, and Bavaria have not acknowledged Toren's ownership of the painting – despite their own website listing the provenance of "Two Riders" as "Collection David Friedmann, Breslau," – nor have they agreed to return the painting to him.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Bailment Contract)

54. Toren incorporates the preceding paragraphs as if set forth fully herein.

55. When Defendants seized and stored "Two Riders" and other artworks in the Friedmann Collection, they indicated an intent to store the artworks until they could determine, and return, the artworks to their rightful owners, wherever they may be.

56. Defendants obtained only a custodial interest in the looted property, *i.e.*, "Two Riders" and other artworks in the Friedmann Collection, rather than ultimate ownership rights.

14

57.     Defendants' possession of "Two Riders" and other artworks from the Friedmann Collection constitutes an express, implied-in-fact, or constructive bailment contract.

58.     Defendants breached this contract by refusing to return the artworks, and that breach constitutes affirmative acts beyond the initial expropriation to deprive the Friedmann heirs of their property rights in the Friedmann Collection.

59.     Under the bailment contract, Defendants owe Toren a duty of care to protect "Two Riders" and other artworks from the Friedmann Collection and return them to him. Defendants, at all relevant times, understood that the Friedmann Collection remained the property of its rightful owner and that the rightful owner retained the right to demand its return.

60.     Toren presently owns and has a right to possession of "Two Riders" and any other artworks in Defendants' possession from the Friedmann Collection.

61.     In a series of letters beginning November 5, 2013, Toren demanded the return of "Two Riders" and other artworks from the Friedmann Collection.  Defendants have refused to even acknowledge that Toren is the rightful owner of "Two Riders."  Any further demand would be futile.

62.     Toren has been damaged by Defendants' breach of their bailment obligations incurred by their refusal to return his property.  Toren is entitled to restitution of "Two Riders" and any other remaining artworks from the Friedmann Collection within Defendants' possession, custody, or control, and any other damages resulting from Defendants' breach.

## SECOND CAUSE OF ACTION
### (Conversion)

63.     Toren incorporates the preceding paragraphs as if set forth fully herein.

64. By refusing to return "Two Riders" and any other artworks from the Friedmann Collection to Toren pursuant to the bailment relationship among the parties, Defendants knowingly converted artworks from the Friedmann Collection.

65. At no point did Toren or his predecessors consent to Defendants' exercise of ownership rights over the Friedmann Collection.

66. Toren has been damaged by the conversion of his property and is entitled to restitution, and any other damages resulting from Defendants' conversion.

### THIRD CAUSE OF ACTION
### (Replevin)

67. Toren incorporates the preceding paragraphs as if set forth fully herein.

68. Defendants have unjustly detained "Two Riders" and likely other artworks from the Friedmann Collection. D.C. Code § 16-3702.

69. Toren claims that the same artworks be taken from Defendants and delivered to him; or, if they are eloigned, that he may have judgment of their value and all damages, which he estimates to be well in excess of one million dollars, in addition to costs. D.C. Code § 16-3702.

70. In Exhibit 3 to this Complaint, undersigned counsel avers, as is required by D.C. Code § 16-3703, that:

> (1) According to Affiant's information and belief, Toren is entitled to recover possession of chattels proposed to be replevied, being the same described in the Complaint;
>
> (2) Defendants detain the chattels; and
>
> (3) The chattels were not subject to the seizure or detention and were not taken upon a writ of replevin between the parties.

### FOURTH CAUSE OF ACTION
### (Constructive Trust)

16

71. Toren incorporates the preceding paragraphs as if set forth fully herein.

72. Defendants wrongfully continue to detain "Two Riders" and other artworks from the Friedmann Collection, despite Toren's demand for their return.

73. As a result, Toren is entitled to the imposition of a constructive trust on "Two Riders" and any other artworks from the Friedmann Collection, obligating Defendants to return the artworks.

## FIFTH CAUSE OF ACTION
### (Accounting)

74. Toren incorporates the preceding paragraphs as if set forth fully herein.

75. As a result of the bailment relationship created among the parties, Defendants had, and continue to have, a fiduciary duty to return "Two Riders" and other artworks in the Friedmann Collection to Toren upon demand. Defendants have failed to fulfill that duty.

76. Toren believes that Defendants may be in possession of other paintings and artworks looted from Friedmann.

77. Defendants have not provided a list of all artworks currently in their possession.

78. Only Defendants know the whereabouts of all of the pieces of the Friedmann Collection that are currently in their possession, custody, or control.

79. Toren has no knowledge of the conditions under which "Two Riders" and other artworks in the Friedmann Collection are being stored.

80. Toren has no adequate remedy at law.

81. Toren is entitled to an accounting of all artworks that are currently in Defendants' possession, custody, or control, or which may later come to be in their possession, custody, or control, that originated from Cornelius or Hildebrand Gurlitt, and an accounting of the conditions under which "Two Riders" and other artworks from the Friedmann Collection are being stored.

**SIXTH CAUSE OF ACTION**
**(Declaratory Relief)**

82. Toren incorporates the preceding paragraphs as if set forth fully herein.

83. An actual case or controversy has arisen between Toren and Defendants concerning the right to ownership and possession of "Two Riders" and other artworks from the Friedmann Collection.

84. Defendants have wrongfully detained "Two Riders" and other artworks from the Friedmann Collection and have refused to provide restitution to Toren.

85. Toren is entitled to a declaratory judgment declaring him to be the owner of "Two Riders" and other artworks from the Friedmann Collection, and directing Defendants to return the artworks to Toren.

86. Toren is further entitled to a declaratory judgment declaring that his right to possess "Two Riders" and other artworks from the Friedmann Collection is superior to any right Defendants may have in those works.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff David Toren respectfully requests that the Court:

    a. Order Defendants to return to Toren "Two Riders" and all other artworks in their possession from the Friedmann Collection;

    b. Declare that Defendants hold as constructive trustees, for and on behalf of Toren, "Two Riders" and other artworks from the Friedmann Collection, and order Defendants to account to Toren for "Two Riders" and other artworks from the Friedmann Collection and to deliver to Toren possession of "Two Riders" and other artworks from the Friedmann Collection;

    c. Order Defendants to account to Toren for all of the artworks that are currently in Defendants' possession, custody, or control, or which may later come to be in their

possession, custody, or control, that originated from Cornelius or Hildebrand Gurlitt, and to account for the conditions in which "Two Riders" and other artworks from the Friedmann Collection are being stored;

   d. Declare that Toren is a legal heir of "Two Riders" and other artworks from the Friedmann Collection and order Defendants to deliver to Toren possession of "Two Riders" and other artworks from the Friedmann Collection;

   e. Declare that Toren's right to possess "Two Riders" and other artworks from the Friedmann Collection is superior to any right Defendants may have in those works;

   f. Award pre- and post-judgment interest on any award; and

   g. Grant Toren such other and further relief as this Court deems just and proper.

Dated: March 5, 2014       Respectfully submitted,

            /s/ August. J. Matteis, Jr.
            August J. Matteis, Jr. (D.C. Bar No. 408592)
            Christopher M. O'Connell (D.C. Bar No. 495495)
            Pamira Shah Matteis (D.C. Bar No. 447159)
            William E. Jacobs*
            WEISBROD MATTEIS & COPLEY PLLC
            1900 M Street, N.W., Suite 850
            Washington, D.C. 200036
            Telephone: (202) 499-7900
            Facsimile: (202) 478-1795
            Email: amatteis@wmclaw.com
                coconnell@wmclaw.com
                pmatteis@wmclaw.com
                wjacobs@wmclaw.com

            *Counsel for Plaintiff*

*Member of the bar of Maryland; D.C. Bar application pending.